TRENTON AND MERCER COUNTY TRACTION CORPORA-
TION, PROSECUTOR, v. CITY OF TRENTON, RESPOND-
ENT.

Argued November 1, 1921—Decided March 13, 1922.

1. The requirements of the "Limited Franchise act" (*Pamph. L.*
1912, *p.* 756) are indicative of the fact that what the legislature
had in mind in the execution of that legislation, was not the
ordinary vehicular use of the highway, but an extraordinary use
thereof, involving a property right in the highway, tantamount
in character, though not in legal effect, to an additional easement
which could be properly dealt with owing to its importance only
by the responsible governing body of the municipality.
2. The "Kates act" (*Pamph. L.* 1916, *p.* 283), as amended (*Pamph.
L.* 1921, *p.* 638), contains in itself all the legislative requirements
as to use and licensing of motor buses and "jitneys," and pre-
sents within its scope a comprehensive and detailed legislative
conception, for the regulation and use of such vehicles for public
transportation; and was enacted in view of all pre-existing
regulatory enactments concerning the same general purpose of
controlling street transportation in municipalities.
3. A consent of a municipality for a concession made by petition
under the provisions of the "Kates act" is not invalid because
the consent was not granted in pursuance of the provisions of
the "Limited Franchise act."

On *certiorari* removing resolution of city of Trenton.

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *Katzenbach & Hunt.*

For the respondent, *Geraghty & Weelans.*

The opinion of the court was delivered by

MINTURN, J.    The city commission of Trenton, on Sep-
tember 7th, 1921, adopted a resolution granting to Israel
Weissberg "consent and permission" to operate passenger
motor buses, for hire, upon certain city streets, leading to

Hightstown, in this state, upon which streets no car tracks had been laid, for the operation of a competing trolley line.

The application for the concession was made by petition, under the provisions of the act of 1916 (*Pamph. L., p.* 283), popularly termed the "Kates or Jitney act," as amended by the act of 1921. *Pamph. L., p.* 638.

The prosecutor contests the legality of the resolution upon the ground that it was not passed in pursuance of the provisions of the act of 1906 (*Comp. Stat., p.* 3562), as amended by the act of 1912 (*Pamph. L., p.* 756), commonly known as the "Limited Franchise act."

The differentiating characteristic between the two acts consists in the requirement of the latter act that the petition shall show the period for which the consent of the municipality is to be given; the posting of a notice and its publication in a newspaper, and finally the expression of the local legislative will, in the form of an ordinance after the passage of the measure shall have been postponed fourteen days from the date of its introduction.

If it be conceded that these preliminaries are essential to a valid expression of the municipal consent, for the purpose in view, manifestly this consent is invalid, because no pretence is made that the municipality deemed it necessary to conform to those requirements.

The petitioner, conceiving that the Kates act contained within itself the latest exclusive expression of the legislative purpose, upon this character of public service, followed its requirements, ignoring the provisions of the Limited Franchise act.

The inquiry presented, therefore, is narrowed to the legal question of judicial construction, *i. e.*, whether the Jitney act repealed by implication *pro tanto* at least the Limited Franchise act, in its application to jitney or motor bus service in cities; and, fundamentally, whether the Limited Franchise act was intended at all to apply to the conditions attending jitney service.

We have held that where an act does not require that municipal consent be given by ordinance, such consent may be effectually expressed by resolution. *Brady* v. *Bayonne,* 57 *N. J. L.* 379.

A conspicuous feature of the Limited Franchise act is that while it requires the municipal consent to be expressed "by ordinance and not otherwise," the ordinance must be passed by the "board or body of such municipality authorized by law to make the grant," and since general ordinances, both at common law and under the provisions of the Home Rule act, can be passed only by the legislative body of the municipality, it becomes apparent that upon the governing body alone of the municipality is superimposed the duties and obligations contained in the provisions of the Limited Franchise act.

The requirements of the act regarding posting and publication, as well as the postponement of action upon the ordinance for a period of fourteen days, as well as all the observance of the detailed minutiæ of a protective character, including special election in certain contingencies, upon a referendum, defined in the act as *sine qua non* to final passage of the ordinance, are indicative of the fact that what the legislature had in mind in the execution of that legislation, was not the ordinary vehicular use of the highway, but an extraordinary use thereof, involving a property right in the highway, tantamount in character, though not in legal effect, to an additional easement which could be properly dealt with owing to its importance only by the responsible governing body of the municipality, which is made directly responsible for any misuse of power to the municipal electorate. Nor is it to be overlooked in any construction of this legislation that at the period when this enactment was passed (1906) the so-called jitney or motor bus was not in general or conspicuous use as a means of transportation, so as to require either municipal consent to, or regulation of, its use. Indeed, it was only in that very year that the legislature deemed it necessary to notice the general use of the motor car as a means of car-

riage, and to provide for its licensing · and registration, as well as the licensing and registration of the drivers of such vehicles. *Pamph. L.* 1906, *p.* 177.

The constructive inference from that fact is that the legislature in passing the act of 1906 could not have had in contemplation a species of public transportation which had no general public existence. Nor is there in the latter act any attempt at jitney regulation or public use. The fact is that it was not until ten years later (1916) that the legislature passed the so-called Jitney act, and provided in every detail for their use and operation, as a means of public transportation on the public streets.

The act contains in itself all the legislative requirements as to use and licensing, and presents within its scope a comprehensive and detailed legislative conception, for the regulation and use of such vehicles for public transportation; and it was of course enacted in view of all pre-existing regulatory enactments concerning the same general purpose of controlling street transportation in municipalities.

This act was under review in this court upon *certiorari* in *West* v. *Asbury Park,* 89 *N. J. L.* 402, and, although attack was made upon its validity and constitutionality from many other viewpoints, apparently at that time (1916), it had not occurred to counsel or court that the attempt of the city of Asbury Park to license jitney and motor buses could be legally effectuated only by resort to the Limited Franchise act. This court in that case sustained the constitutionality of the act of 1916, and we must assume that its judgment was reached after a review of all previous legislation bearing upon the subject, including the provisions of the Limited Franchise act.

There is also to be remarked in conclusion that the act of 1916 bears upon its face a clear legislative intent to comprehend within its provisions a definitive and complete enactment, by which a new method of transportation, known as jitney and motor buses, is segregated as a class from the

general instrumentalities of street transportation, theretofore recognized by legislation, and is regulated and licensed as such.

In such a condition, upon well-settled principles of statutory construction, we must assume that the legislature intended to deal exclusively with this method of municipal street transportation, and to repeal by implication, if not by express verbiage, other inconsistent legislation dealing with the general subject-matter.

As was declared by Mr. Justice Van Syckel, speaking for this court in *Roche* v. *Jersey City*, 40 *N. J. L.* 257, such an enactment "is decisive evidence of an intention to prescribe the provisions contained in the later act as the only one on that subject which shall be obligatory."

In *Anderson* v. *Camden*, 58 *N. J. L.* 515, the present Chief Justice reiterated the same doctrine in the declaration that "it is a settled rule in the construction of statutes that even if the subsequent statute be not repugnant in its provisions to a prior one, yet if it was clearly intended to prescribe the only rule in the case provided for, it repeals all prior acts which regulate the subject."

To the same effect: *Harrington* v. *Jersey City*, 78 *N. J. L.* 610; *Eldridge* v. *Philadelphia and Reading Railroad Co.*, 83 *Id.* 463; 25 *R. C. L.* 915, and cases cited.

The determination in *Public Service Co.* v. *Gen. Omnibus Co.*, 93 *N. J. L.* 344, in nowise militates against this conclusion. Its effect is simply to leave it optional with an applicant to apply to the municipality for the desired license under the provisions of either act.

The result is that the resolution brought up by this writ will be affirmed, with costs.